UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

---

ERIK ANTHONY ELLINGTON,

        Plaintiff,                 Case No. 2:16-cv-230

v.                                        Honorable Robert J. Jonker

GARY KARKKILA, et al.,

        Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Masters, Schram, Brinkman, Kienitz, Bonevelle, Denman, Blough, Froberg, Immel, Bauman, Cromell, and Sprader. The Court will serve the complaint against Defendant Karkkila a/k/a Parkkila.

**Discussion**

I.        Factual allegations

Plaintiff Erik Anthony Ellington, a state prisoner currently confined at the Chippewa Correctional Facility (URF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Corrections Officer Gary Karkkila[1], Assistant Resident Unit Supervisor R. Masters, Resident Unit Manager G. Schram, Sergeant Unknown Brinkman, Lieutenant Unknown Kienitz, Grievance Coordinator Mary Bonevelle, Sergeant J. T. Denman, Corrections Officer Unknown Blough, Corrections Officer Unknown Froberg, Assistant Deputy Warden Anthony Immel, Warden Catherine S. Bauman, Corrections Officer Unknown Cromell, and Assistant Deputy Warden Scott Sprader, all of whom were employed at the Alger Correctional Facility (LMF) during the pertinent time period.

In his complaint (ECF No. 1), as well as in his supporting affidavit (ECF No. 9), Plaintiff alleges that he arrived at LMF on August 20, 2015. Plaintiff claims that Defendant Parkkila verbally harassed him between February 3, 2016, and February 21, 2016. On March 20, 2016, Defendant Parkkila discovered that Plaintiff had complained about him to Defendant Masters. Defendant Parkkila then wrote a major misconduct ticket on Plaintiff for having a cup of bleach in his cell. As a result of the misconduct, Plaintiff was confined to segregation. Plaintiff was released from segregation on April 16, 2016, whereupon Defendant Parkkila began harassing him again. Plaintiff complained to Defendant Masters. On April 22, 2016, Defendant Parkkila observed Plaintiff returning from his Al-Islam religious call-out with his Kufi cap on his head. Defendant

---

[1] Also referred to as Gary Parkkila in the body of Plaintiff's complaint. Because Plaintiff only refers to Gary Parkkila in the body of his complaint, it appears that the usage of Karkkila in the heading was an error. Therefore, the Court will use "Parkkila" in the body of this opinion.

Parkkila yelled at Plaintiff to remove his cap. Plaintiff explained that prison policy allowed him to wear his Kufi cap to and from religious services. Defendant Parkkila became irate and stated, "I don't give a shit about your religio[n] or what policy says, I told you to remove it." Plaintiff told Defendant Parkkila that he was going to file a grievance and Defendant Parkkila responded, "oh yeah, well you obviously need your room shaken down for contraband." Plaintiff filed a grievance.

On May 2, 2016, Defendant Parkkila wrote a class II misconduct ticket on Plaintiff for having a makeshift shelf rigged up in his cell using string tied between the wall locker and the bottom bunk. Plaintiff complained to Defendants Park and Denman, asserting that he believed the misconduct was discriminatory and retaliatory. Defendants Park and Denman merely told Plaintiff to take the misconduct and the 5 days loss of privileges, and to stop writing grievances or go to segregation. On May 6, 2016, Defendants Brinkman and Schram denied Plaintiff's step II grievance appeal regarding Defendant Parkkila's refusal to allow Plaintiff to wear a Kufi cap. On May 13, 2016, Defendant Parkkila threatened to kill Plaintiff and/or to plant a knife in Plaintiff's cell. Defendant Parkkila told Plaintiff he could write all the grievances he wanted, but told him that if he wanted to play that game, Defendant Parkkila would win. *Id.* Plaintiff filed a grievance regarding this conduct, as well as complained about it to Defendants Brinkman, Masters, and Blough.

On May 20, 2016, Plaintiff returned from his work assignment and found that someone had poured baby powder and water all over his legal and personal property. Plaintiff states that Defendant Parkkila was the only person who had access to his cell. On May 21, 2016, Defendant Brinkman reviewed Plaintiff's grievance regarding Defendant Parkkila. In addition, Defendant Kienitz told Plaintiff not to have his family members calling the state police to complain about prison staff. Defendant Kienitz also told Plaintiff that if he stopped writing grievances, the

retaliatory harassment would stop. On May 22, 2016, Defendant Parkkila refused to let Plaintiff go to the recreation room to call his family and attorney. Plaintiff sent letters to Defendants Bauman and Immel to complain about Defendant Parkkila, but never received a response.

Plaintiff claims that between May 12, 2016, and May 23, 2016, Defendant Bonevelle refused to give Plaintiff a step II appeal form, but finally sent Plaintiff a step II form on June 1, 2016. Plaintiff claims that Defendants Brinkman, Schram, Bauman, and Denman all denied his grievances and grievance appeals. On May 22, 2016, Defendant Blough told Defendant Schram to have Plaintiff moved to another housing unit. On May 23, 2016, Defendant Schram told Plaintiff that he was being moved to Maple Unit. Upon Plaintiff's arrival on Maple unit, officers asked Plaintiff about problems between him and Defendant Parkkila. Plaintiff believes that Defendant Parkkila made it known to Maple unit officers that Plaintiff was a target of his.

Plaintiff claims that Defendants violated his rights under the First, Fifth, and Fourteenth Amendments, as well as his state law rights. Plaintiff seeks compensatory and punitive damages, as well as injunctive and equitable relief.

II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state

a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff claims that Defendant Bonevelle interfered in his ability to exhaust his administrative remedies by refusing to give him step II appeal forms in a timely manner. Plaintiff has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445

(6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendant Bonevelle's conduct did not deprive him of due process.

Moreover, Defendant Bonevelle's actions have not barred Plaintiff from seeking a remedy for his grievances. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 Fed. App'x 411, 415-416 (6th Cir. 2014) (citing *North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n. 6 (1977)). Indeed, Plaintiff's ability to seek redress is underscored by his pro se invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821-24 (1977). The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to

the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 136 S. Ct. 1850, 1858-59 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio*, 20 F. App'x 469, 470 (6th Cir. 2001). In light of the foregoing, the Court finds that Plaintiff fails to state a cognizable claim against Defendant Bonevelle.

Plaintiff claims that Defendant Parkkila discriminated against him because he is African American and because he is a Muslim. The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. CONST., amend. XIV; *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). When a law adversely impacts a "suspect class" such as one defined by race, alienage, or national origin, or invades a "fundamental right" such as speech or religious freedom, the rigorous "strict scrutiny" standard ordinarily governs, whereby such laws "will be sustained only if they are suitably tailored to serve a compelling state interest." *City of Cleburne*, 473 U.S. at 440. However, while a convicted prisoner does not forfeit all constitutional protections by virtue of his confinement, "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights . . . ." *Price v. Johnston*, 334 U.S. 266, 285 (1948). "The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives – including deterrence of crime, rehabilitation of prisoners, and institutional security." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (citing, *inter alia*, *Turner v. Safley*, 482 U.S. 78, 84 (1987)).

To establish a violation of the Equal Protection Clause, an inmate must show that the defendants purposefully discriminated against him. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977). Such discriminatory purpose must be a motivating factor in the actions of the defendants. *Id.* at 265-66. "A plaintiff presenting a race-based equal protection claim can either present direct evidence of discrimination, or can establish a prima facie case of discrimination under the burden-shifting scheme set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Umani v. Mich. Dep't of Corr.*, 432 F. App'x 453, 458 (6th Cir. 2011).

Plaintiff's allegation of discriminatory treatment by Defendant Parkkila is conclusory. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. In this case, Plaintiff alleges that Defendant Parkkila became angry when he saw Plaintiff wearing his Kufi cap and ordered Plaintiff to remove the cap. Plaintiff asserts that it is a well known fact that Defendant Parkkila disliked Muslims, but fails to allege any facts supporting this assertion. In addition, Plaintiff fails to allege any facts showing that Defendant Parkkila's conduct was motivated by a desire to discriminate against him on the basis of his race. Based on the allegations in Plaintiff's complaint, it is unclear whether Defendant Parkkila's order to remove his cap was motivated by a desire to discriminate against Plaintiff because of his Islamic religious affiliation, or whether he would have ordered Plaintiff to remove the cap even if he was Jewish or had some other religious affiliation.

Plaintiff fails to allege sufficient facts to support a claim of intentional race discrimination by either direct or indirect evidence. *See Davis v. Prison Health Servs.*, 679 F.3d 433, 440 (6th Cir. 2012) (discussing the distinction between direct and indirect methods of proving

discrimination). As noted above, Plaintiff alleges no facts constituting direct evidence of discriminatory motive or purpose. *See Umani v. Mich. Dep't of Corr.*, 432 F. App'x 453, 458 (6th Cir. 2011) (citing *Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003)); *see also Davis*, 679 F.3d at 440. Second, Plaintiff fails to allege a *prima facie* claim under the indirect, burden-shifting framework of *McDonnell Douglas v. Green*, 411 U.S. 792 (1973), because he fails to allege that he was treated differently from a member of a different religion or race who was similarly situated in all relevant respects. *See Umani*, 432 F. App'x at 458. Because Plaintiff has failed to allege facts which demonstrate a discriminatory intent, his equal protection claim against Defendant Parkkila is properly dismissed.

It is unclear whether Plaintiff is asserting that Defendant Parkkila's conduct violated his First Amendment right to freely practice his religion. However, even if Plaintiff is asserting such a claim, it would be dismissed for lack of merit. While "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates clearly retain the First Amendment protection to freely exercise their religion. *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted). To establish that this right has been violated, Plaintiff must establish that: (1) the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that his belief is sincerely held, and (3) Defendant's behavior infringes upon this practice or belief. *Kent v. Johnson*, 821 F.2d 1220, 1224-25 (6th Cir. 1987); *see also, Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (same); *Bakr v. Johnson*, No. 95-2348, 1997 WL 428903, at *2 (6th Cir. July 30, 1997) (noting that "sincerely held religious beliefs require accommodation by prison officials").

Plaintiff's allegations fail to demonstrate that Defendant Parkkila's order to remove his Kufi cap were sufficient to infringe upon Plaintiff's religious rights.

> Courts routinely have rejected claims of constitutional violations based solely on verbal harassment. *See, e.g., Shuaib v. Siddum*, No. 88–86126, 1988 WL 86126, at *1 (6th Cir. 1988) (holding that prison officials' refusal to address prisoners by their newly adopted legal names does not violated the religion clauses of the First Amendment) (citing *Ivey v. Wilson*, 832 F.2d 950, 954–55 (6th Cir. 1987) (holding that verbal harassment is insufficient to support an Eighth Amendment claim)); *Hailes v. Collier*, No. 2:12–cv–687, 2014 WL 2515581, at *5 (S.D. Ohio June 3, 2014) (holding that verbal harassment is insufficient to state a claim under § 1983 for violation of any constitutional amendment, including the First Amendment religion clauses) (citing *Siggers v. Renner*, 37 F. App'x 138, 141 (6th Cir.2002), and *Wingo v. Tenn. Dep't of Corr.*, 499 F. App'x 453, 455 (6th Cir. 2012)); *Mizori v. Miller*, No. 5:09–cv–10824, 2009 WL 777640, at *2 (E.D. Mich. Mar. 20, 2009) (holding that verbal harassment was insufficient to support a claim of religious discrimination under the First Amendment).

*Annabel v. Mich. Dep't of Corr.*, No. 1:14-cv-756, 2014 WL 4187675, at *15 (W.D. Mich. Aug. 21, 2014). In light of the minimal nature of the order to remove his Kufi cap, Plaintiff fails to state a claim for violation of his religious rights under the First Amendment.

Plaintiff claims that Defendant Parkkila violated his due process rights when he wrote misconduct tickets on him. As noted above, Defendant Parkkila wrote a major misconduct on Plaintiff on March 20, 2016, and a class II minor misconduct ticket on Plaintiff on May 2, 2016. A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 486-87 (1995). The Sixth Circuit routinely has held that misconduct convictions that do not result in the loss of good time are not atypical and significant deprivations and therefore do not implicate due process. *See, e.g., Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003); *Green v. Waldren*,

No. 99-1561, 2000 WL 876765, at *2 (6th Cir. June 23, 2000); *Staffney v. Allen*, No. 98-1880, 1999 WL 617967, at *2 (6th Cir. Aug. 12, 1999).

The Sixth Circuit has examined Michigan statutory law, as it relates to the creation and forfeiture of disciplinary credits[2] for prisoners convicted of crimes occurring after April 1, 1987. In *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007), the court determined that loss of disciplinary credits does not necessarily affect the duration of a prisoner's sentence. Rather, it merely affects parole eligibility, which remains discretionary with the parole board. *Id.* at 440. Building on this ruling, in *Nali v. Ekman*, 355 F. App'x 909 (6th Cir. 2009), the court held that a misconduct citation in the Michigan prison system does not affect a prisoner's constitutionally protected liberty interests, because it does not necessarily affect the length of confinement. 355 F. App'x at 912; *accord, Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011); *Wilson v. Rapelje*, No. 09-13030, 2010 WL 5491196, at * 4 (E.D. Mich. Nov. 24, 2010) (Report & Recommendation) (holding that "plaintiff's disciplinary hearing and major misconduct sanction does not implicate the Fourteenth Amendment Due Process Clause"), *adopted as judgment of court*, 2011 WL 5491196 (Jan. 4, 2011). Even in the absence of a protectible liberty interest in disciplinary credits, a prisoner may be able to raise a due-process challenge to prison misconduct convictions that result in a significant, atypical deprivation. *See Sandin v. Connor*, 515 U.S. 472 (1995). Plaintiff has not identified any significant deprivation arising from his convictions. Unless a prison misconduct conviction results in an extension of the duration of a prisoner's sentence or some other atypical hardship, a due-process

---

[2] For crimes committed after April 1, 1987, Michigan prisoners earn "disciplinary credits" under a statute that abolished the former good-time system. MICH. COMP. LAWS § 800.33(5).

-11-

claim fails. *Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004). Therefore, Plaintiff's claim that the misconduct tickets written by Defendant Parkkila violate due process are properly dismissed.

Plaintiff also claims that Defendant Parkkila violated his due process rights when he destroyed Plaintiff's legal and personal property by pouring water and baby powder on it. Plaintiff's due process claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivation of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, numerous state post-deprivation remedies are available to him. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. MICH. DEP'T OF CORR., Policy Directive 04.07.112, ¶ B (effective Dec. 12, 2013). Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. MICH. COMP. LAWS § 600.6419; MDOC

Policy Directive 03.02.131 (effective Oct. 21, 2013). Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments, commissions, boards, institutions, arms, or agencies." MICH. COMP. LAWS § 600.6419(1)(a). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property. Accordingly, this claim will be dismissed.

Plaintiff claims that Defendant Parkkila retaliated against him for his use of the grievance system by writing a class I and class II misconduct ticket on him and by destroying his legal and personal property. The Court concludes that Plaintiff's retaliation claim against Defendant Parkkila is not clearly frivolous and may not be dismissed on initial review.

Plaintiff alleges that Defendants Masters, Schram, Brinkman, Kienitz, Bonevelle, Denman, Blough, Froberg, Immel, Bauman, Cromell, and Sprader all conspired with Defendant Parkkila to violate Plaintiff's rights. A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Hensley*, 693 F.3d at 695; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by

allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Plaintiff's allegations of conspiracy are conclusory and speculative. Plaintiff merely asserts that these Defendants failed to take any corrective action against Defendant Parkkila after they observed Defendant Parkkila's conduct or reviewed Plaintiff's grievances and complaints. Plaintiff has provided no allegations establishing an agreement between Defendant Parkkila and the other named Defendants. Allegations which do not contain facts showing the existence of any agreement fails to state a plausible claim of conspiracy.

Moreover, government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants Masters, Schram, Brinkman, Kienitz, Bonevelle, Denman, Blough, Froberg,

Immel, Bauman, Cromell, and Sprader engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

Finally, the Court notes that claims under § 1983 can only be brought for "deprivation of rights secured by the constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Plaintiff's assertion that Defendants violated state law therefore fails to state a claim under § 1983. Moreover, to the extent that Plaintiff seeks to invoke this Court's supplemental jurisdiction over a state-law claim, the Court declines to exercise jurisdiction. In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *Id.* Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012). Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction. Accordingly, Plaintiff's state-law claim will be dismissed without prejudice to his ability to bring those claims in state court.

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Masters, Schram, Brinkman, Kienitz, Bonevelle, Denman, Blough, Froberg, Immel, Bauman, Cromell, and Sprader will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will serve the complaint against Defendant Karkkila a/k/a Parkkila.

An Order consistent with this Opinion will be entered.


Dated: April 28, 2017        /s/ Robert J. Jonker
                             ROBERT J. JONKER
                             CHIEF UNITED STATES DISTRICT JUDGE